IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 97-20317
Summary Calendar
_____

IN THE MATTER OF:

   SUPERIOR OILFIELD PRODUCTS, INCORPORATED,

        Debtor.

_____

JAMES P. SMITH, Disbursing Agent for Superior Oilfield Products, Incorporated,

     Appellant,

v.

RICHARD CHURCH,

     Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
(H-96-CV-1137)
_____

October 27, 1997

Before JOLLY, BENAVIDES, AND PARKER, Circuit Judges.

PER CURIAM:[1]

     The appellant, James P. Smith, the disbursing agent for Superior Oilfield Products, Inc.

("SOP"), appeals the bankruptcy court's denial of his petition for the equitable subordination of

Richard Church's claim.  For the reasons set forth below, we AFFIRM.

_____

     [1]   Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is
not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

This action is the most recent event in an ongoing family saga involving Richard Church and his son, Michael Church. In 1985, Richard Church and Michael Church formed Superior Oilfield Services, Inc. ("SOS"). Although each owned fifty percent of the company, Richard Church contributed almost all of initial capital. Shortly thereafter, Richard Church and Michael Church stopped speaking with one another, and Richard Church ceased active participation in SOS.

Sometime after Richard Church ceased active participation in SOS, Michael Church incorporated SOP, the debtor, using the location, business, employees, products, and other assets of SOS. In 1989, upon learning of these events, Richard Church sued Michael Church, SOS, and SOP in state court, alleging that Michael Church had converted the value of SOS by diverting its business, assets, and employees to SOP. The parties settled the state court suit on April 22, 1992. The written settlement agreement required Richard Church to release any cause of action he might have against Michael Church, SOS, or SOP, and to release all claims of ownership of shares in SOS or SOP. In exchange, the settlement provided that SOP would transfer some equipment and make a series of payments to Richard Church, beginning with a $5,000 lump sum payment, followed by monthly payments of $500 for the next twelve months, $750 for the following twelve months, and $1,000 per month for the remainder of Richard Church's life.

On July 2, 1994, SOP filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On August 30, 1994, Richard Church filed his proof of claim, stating an unsecured claim for $292,000. On the first page of the proof of claim, in the box requesting disclosure of the "Basis for Claim," the box titled "Other" is checked and the words "Original Stockholder" are typed into the space allowed for a brief description. In the bench trial, Richard Church testified that he meant that

2

he was an original stockholder in SOS.

On December 7, 1994, the debtor filed this complaint, objecting to Richard Church's claim on the grounds that the claim should be subordinated to the claims of all other creditors, that Richard Church's proof of claim should be categorized as proof of an equity interest rather than a debt, and that the claim originated from a fraudulent transfer. After conducting an evidentiary hearing on the debtor's complaint, the bankruptcy court, in a Memorandum Opinion dated February 6, 1996, rejected each of the debtor's claims. On appeal to the district court, the debtor primarily challenged the bankruptcy court's conclusion that equitable subordination did not apply. The district court rejected the debtor's claim, finding that there was no inequitable conduct by Richard Church and that "no-fault" subordination was inapplicable to the facts of this case.

## II.

As an initial matter, we address the appellee's argument that this appeal should be dismissed because James P. Smith is not a proper party and, therefore, does not have standing to bring this appeal. According to the appellee, the record does not establish any connection between Mr. Smith and this case. This argument is entirely without merit. Mr. Smith was appointed by the bankruptcy court as the disbursing agent for the debtor and, as such, has standing to bring this appeal. Accordingly, we reject the appellee's jurisdictional argument.

## III.

Although the appellant has raised four issues on appeal, in reality, this appeal presents only one issue: whether the bankruptcy court erred in concluding that equitable subordination did not

apply.  In reviewing a decision of a bankruptcy court, we review the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law *de novo*.  *In re United States Abatement Corp.*, 79 F.3d 393, 397 (5th Cir. 1996).  A finding of fact is clearly erroneous if, after review of all the evidence, the court is left with a firm conviction that the bankruptcy court erred.  Fed. R. Bankr. P. 8013;  *In re McDaniel*, 70 F.3d 841, 843 (5th Cir. 1995).

As the district court correctly noted, in this circuit, there is a well-established three- pronged test for determining whether equitable subordination is appropriate.  *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 357 (5th Cir. 1997) (citing *In re United States Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994)).  First, the claimant must have engaged in some type of inequitable conduct.  Second, the conduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant.  Third, the invocation of equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code.  *In re Cajun Elec.*, 119 F.3d at 357.  "While our three-pronged test appears to be quite broad, we have largely confined equitable subordination to three general paradigms:  (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors."  *In re United States Abatement Corp.*, 39 F.3d at 561; *accord In re Cajun Elec.*, 119 F.3d at 357.

After reviewing the record in this case, we find no basis for overturning the bankruptcy court's finding that there was no evidence of inequitable conduct on behalf of Richard Church.  In particular, we note that there is no evidence of collusion between the debtor and Richard Church.  On the contrary, as the bankruptcy court noted, the uncontroverted evidence shows that Richard Church and Michael Church had not spoken for years prior to the filing of Richard Church's state

4

lawsuit.

In anticipation of this rather unremarkable conclusion, the appellant urges us to adopt the "no-fault" doctrine of equitable subordination. Under this doctrine, a court can subordinate a claim without first finding inequitable conduct on behalf of the claimant. *See In re Envirodyne Indus., Inc.*, 79 F.3d 579, 581-82 (7th Cir.), *cert. denied*, 117 S. Ct. 77 (1996); *In re Virtual Network Servs. Corp.*, 902 F.2d 1246, 1250 (7th Cir. 1990) ("In sum, we conclude that [11 U.S.C.] § 510(c)(1) authorizes courts to equitably subordinate claims to other claims on a case-by-case basis without requiring in every instance inequitable conduct on the part of the creditor claiming parity among other unsecured general creditors."). Instead, the court "look[s] to the origin and nature of the unsecured claim and decide[s] whether equity requires that it be subordinated to claims of other general unsecured creditors." *In re Evirodyne Indus.*, 79 F.3d at 582.

Even if we were inclined to adopt this doctrine, and we express no opinion on the issue today, we would not apply the rule to the facts of this case. As the district court correctly noted, the cases that the appellant cites in support of its argument are limited to tax penalty cases, punitive damages cases, and claims originating from a stock redemption or similar transaction. *See, e.g.*, *In re Envirodyne Indus.*, 79 F.3d 579 (treating a short-form merger like a stock redemption); *Burden v. United States (In re Burden)*, 917 F.2d 115, 116-18 (3d Cir. 1990) (tax penalty); *Robinson v. Wangeman*, 75 F.2d 756 (5th Cir. 1935) (stock redemption); *In re New Era Packaging, Inc.*, 186 B.R. 329 (Bankr. D. Mass. 1995) (stock redemption); *In re Colin*, 44 B.R. 806, 810 (Bankr. S.D.N.Y. 1984) (punitive damages).

Although the appellant, relying on our decision in *Robinson*, argues that Richard Church's state court claim should be viewed as a redemption of stock in SOP in exchange for debt, the facts

of this case do not support this analogy. In this case, unlike *Robinson*, Richard Church never held stock in the debtor company—SOP. Instead, Richard Church held stock in SOS and his state court suit was, in essence, an action to recover his fifty-percent interest in that company. Indeed, in the state court suit, Richard Church argued that Michael Church and SOP had appropriated and converted SOS's assets and business opportunities.[2] Accordingly, we find that, even if we were inclined to adopt the "no-fault" doctrine of equitable subordination, we would not extend its application to the facts of this case.

IV.

For the reasons set forth above, we AFFIRM.

---

[2] The appellant contends that Richard Church judicially admitted that he had an equity interest in SOP. Upon review of the testimony, we find the Richard Church's statements are, at most, equivocal. Moreover, irrespective of what he thought he may have owned, the record is clear that Richard Church never acquired an equity interest in SOP. Accordingly, we find the appellant's judicial admission arguments to be without merit.